# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Earl Roberts (Y-15872), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14 C 4719 |
| v. ) | |
| ) | Jeffrey T. Gilbert |
| Dr. Salim Dawalibi, ) | Magistrate Judge |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

In this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, Plaintiff Earl Roberts, who is currently in state custody, contends that he received constitutionally inadequate medical care for athlete's foot when he was detained at the Cook County Jail. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. (ECF No. 33.) Defendant Salim Dawalibi, M.D., has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 73.) For the reasons discussed below, Dr. Dawalibi's motion is granted in its entirety.

## I. NORTHERN DISTRICT OF ILLINOIS LOCAL RULE 56.1

Local Rule 56.1 sets out a procedure for presenting facts that are germane to a party's request for summary judgment pursuant to Fed. R. Civ. P. 56. Specifically, Local Rule 56.1(a)(3) requires the moving party to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." *Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014). Each paragraph of the movant's statement of facts must include "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that

paragraph." L.R. 56.1(a). The opposing party must file a response to each numbered paragraph in the moving party's statement, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." L.R. 56.1(b)(3)(C). The nonmoving party may also present a separate statement of additional facts "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(C). "[I]f additional material facts are submitted by the opposing party . . ., the moving party may submit a concise reply in the form prescribed in that section for a response." L.R. 56.1(a).

Because Roberts is proceeding *pro se*, Dr. Dawalibi served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local Rule 56.2. (ECF No. 75.) The notice explained how to respond to Dr. Dawalibi's summary judgment motion and Local Rule 56.1 statement of facts and cautioned Roberts that the Court would deem Dr. Dawalibi's factual contentions admitted if Roberts failed to follow the procedures delineated in Local Rule 56.1. Dr. Dawalibi also filed a motion for summary judgment (ECF No. 73), a supporting memorandum (ECF No. 76), and a Local Rule 56.1(a)(3) Statement of Material Facts (ECF No. 74). Roberts filed a response to Dr. Dawalibi's statement of facts (ECF No. 93), but did not submit a memorandum setting forth his position. Dr. Dawalibi then filed a reply memorandum (ECF No. 104) focusing on alleged deficiencies in Robert's response to his statement of facts.

Although courts construe *pro se* pleadings liberally, *see Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("even *pro se* litigants must follow procedural rules"). The Court will discuss facts that Roberts has attempted to contest below, but to the extent that he did not otherwise respond to Dr. Dawalibi's statement of facts, the Court will accept Dr. Dawalibi's "uncontroverted version of the facts to the extent that it is supported by evidence in the record." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). Notwithstanding any admissions, however, the Court has interpreted Roberts' filings generously consistent with his *pro se* status and will construe his submissions, as well as the record evidence (which includes his deposition in this case), in the light most favorable to him, to the extent that he has either pointed to evidence in the record or could properly testify himself about the matters asserted. *Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); Fed. R. Evid. 602. With these standards in mind, the Court turns to the relevant facts.

## II. BACKGROUND

Roberts entered the Cook County Jail as a pretrial detainee in November 2011. (ECF No. 74, Def.'s SOF, at ¶ 1.) Dr. Dawalibi is a primary care physician who practices at Cermak Health Center and provides medical care to detainees at the Cook County Jail. (*Id.* at ¶ 20; ECF No. 74-2, Dawalibi Dec., at ¶ 3.) Roberts is not aware of Dr. Dawalibi's medical training, does not know where he attended medical school, and is unfamiliar with any training Dr. Dawalibi received when he began working at Cermak. (ECF No. 74-1, Pl.'s Dep., at 102:3-15.) Dr. Dawalibi's

3

experience as a primary care physician qualifies him to diagnose athlete's foot (also known as tinea pedis), and he has diagnosed this condition throughout his career.[1] (ECF No. 74, Def.'s SOF, at ¶¶ 13, 20.)

At an unknown point during his stay at Cook County Jail, but before his feet began to itch and burn, an unknown individual at the Jail prescribed a "dry skin cream" for Roberts. (ECF No. 74-1, Pl.'s Dep., at 39:1-7; 72:11-17.) Roberts used the cream on various areas of his body, including his feet. (*Id.* at 72:22-73:4.)

According to Roberts, the "first day" his feet started itching and burning was January 6, 2014. (ECF No. 74, Def.'s SOF, at ¶¶ 2-3; ECF No. 74-1, Pl.'s Dep., at 39:11-12.) He contends that this caused him to experience difficulty walking. (ECF No. 74, Def.'s SOF, at ¶ 3.) Roberts asserts that he had an appointment with Dr. Dawalibi on January 6, 2014.[2] (*Id.* at ¶ 4.) Cermak's records, however, indicate that Dr. Feldman, not Dr. Dawalibi, saw Roberts on January 6, 2014, to treat acid reflux. (*Id.* at ¶ 10.) Dr. Feldman's notes from January 6, 2014, reflect her opinion

---

[1] Roberts disputes that Dr. Dawalibi was capable of diagnosing athlete's foot because "it took another doctor to diagnose tinia pedis and recommend [a] foot cream." (ECF No. 93, Pl.'s Resp. to SOF, at ¶ 8.) Robert's criticism of the care provided by Dr. Dawalibi does not create a material question of fact regarding Dr. Dawalibi's qualifications. *See, e.g.*, *Fetzer v. Wal-Mart Stores, Inc.*, No. 13 C 9312, 2016 WL 792296, at *8 (N.D. Ill. Mar. 1, 2016) (disregarding unresponsive denials of fact). In any event, Robert's personal belief that Dr. Dawalibi is not qualified to diagnose athlete's foot is not enough to call into question Dr. Dawalibi's qualifications or the existence of multiple prior diagnoses of athlete's foot. *See Cunningham v. Cross*, No. 15-CV-0260-MJR-SCW, 2016 WL 93511, at *4 (S.D. Ill. Jan. 8, 2016) (rejecting plaintiff's challenge to a doctor's decision to order physical therapy because while "[t]he Plaintiff does not feel that Dr. Kruse possesses the necessary training or education to properly evaluate his condition," he did "not provide a basis for this other than his own opinion").

[2] Inconsistently, in his amended complaint, Roberts alleges that he first saw Dr. Dawalibi one week after the onset of symptoms on January 6, 2014, and that during this appointment, Dr. Dawalibi examined him and referred him to a podiatrist. (ECF No. 10, Pl.'s Am. Compl., at p. 4.) In his response to Dr. Dawalibi's statement of facts, Roberts clarifies that his position is that his first appointment with Dr. Dawalibi was on January 6, 2014. The Court will, therefore, assume that the amended complaint's reference to a new patient appointment a week after January 6, 2014, is an inadvertent error and will proceed with the understanding that Roberts contends that he first saw Dr. Dawalibi on January 6, 2014.

4

that Roberts' skin was "[i]ntact, no rash." (*Id.* at ¶ 11.) Dr. Dawalibi denies examining Roberts at any time during January 2014. (*Id.* at ¶ 9.)

During his deposition, Roberts testified that during his purported January 6, 2014 appointment with Dr. Dawalibi, he told Dr. Dawalibi that his feet were "burning" so Dr. Dawalibi "examined [Roberts'] feet by . . . eye contact nature, just looked at them, because he's not a foot doctor." (ECF No. 74-1, Pl.'s Dep., at 37:7-16.) Roberts "probably stayed in there talking to [Dr. Dalawibi] maybe, per se, about—could have been 45 minutes to an hour. [Dr. Dawalibi] was checking over [Roberts] for other things that he hadn't called [Roberts] down there for," as well as evaluating Roberts' feet. (*Id.* at 36:18-37:1.) Roberts testified that he did not ask Dr. Dawalibi for cream or other medication for his feet. (ECF No. 74, Def. SOF, at ¶ 7.) At the end of the alleged appointment, Roberts contends that Dr. Dawalibi stated, "Earl, I'm not, per se, a foot doctor; I'm going to have to set you up for an appointment with a podiatrist." (*Id.* at 35:12-36:6.)

Roberts then saw Dr. Dawalibi enter a request for a podiatrist appointment into the computerized scheduling system, although he could not see the date selected by Dr. Dawalibi. (*Id.* at 41:18-42:6.) The record reflects that on January 30, 2014, Plaintiff was seen by Dr. Doyle, a podiatrist. Dr. Doyle's handwritten consultation notes state, "Resolved. Tinea Pedis - no tx. needed."[3] (ECF No. 74, Def. SOF, at ¶ 12.)

In response to a grievance Roberts filed about ongoing issues with his feet, on March 5, 2014, Roberts was called to see the nursing supervisor. (ECF No. 74-1, Pl,'s Dep., at 44:8-19.) Dr. Dawalibi "happened to be walking by" as Roberts voiced concerns about a lack of follow-up

---

[3] Roberts challenges Dr. Doyle's assessment, stating, "I do not agree . . . because it's not on facility MRN-566352 E.R. V.D. 000005." (ECF No. 93, Pl's Resp. to Def.'s SOF, at ¶ 6.) The meaning of this statement is unclear. However, the medical records submitted by Dr. Dawalibi reflect that his quotation of Dr. Doyle's consultation notes is accurate. (ECF 74, Def.'s SOF at ¶ 12, quoting ECF 107, Med. Records, at CCSAO 00232.)

5

care for his feet, and said, "Earl, what's going on?" (*Id.* at 46:1-9.) According to Roberts, after he explained that he had not yet seen the podiatrist, Dr. Dawabili said, "Come over here in my office; we're going to talk about it. [Dr. Dawalibi] went in there. He put in another date for me to see this podiatrist." (*Id.* at 46:12-15.) When Roberts was in Dr. Dawalibi's office, Dr. Dawalibi also examined Robert's feet. (*Id.* at 46:16-20.) Dr. Dawalibi determined that Roberts was experiencing foot odor and had dead skin on his feet with no signs of infection. (ECF No. 74, Def.'s SOF, at ¶ 17.) Dr. Dawalibi did not observe that Robert' feet were bleeding or that he had any difficulty walking, but he nevertheless referred Roberts to a podiatrist. (*Id.* at ¶¶ 16-19.) Roberts testified that he did not know if Dr. Dawalibi conducted an investigation regarding the podiatrist appointment after this interaction. (ECF No. 74-1, Pl.'s Dep., at 103:18-23.)

After the podiatrist appointment promised on March 5, 2014, did not materialize, Roberts submitted additional grievances. (*Id.* at 67:16-68:5.) Roberts contends that during a June 2014 appointment with a "fill-in doctor for Dr. Dawalibi," who was on vacation, he again complained that he had not seen the podiatrist. (*Id.* at 47:19-48:16.) According to Roberts, the doctor told him that he had "a very serious case of athletic feet," prescribed "athletic foot cream" and Tylenol, and expressed concern about Roberts' use of the prescription dry skin cream on his feet. (*Id.* at 48:20-49:23; 54:16:-21; 63:6-8.) At that point, Roberts alleges that his feet were bleeding and he "was peeling chunks of skin off [his] feet." (*Id.* at 50:2-15.)

On July 3, 2014, Physician's Assistant Barbara Davis saw Roberts in connection with his feet. (ECF No. 74, Def.'s SOF, at ¶ 21) According to Roberts, the peeling skin problem had persisted and he was still experiencing bleeding. (*Id.* at ¶ 22.) Physician's Assistant Davis diagnosed Plaintiff with athlete's foot and prescribed antifungal cream. (*Id.* at ¶ 23.) Her notes state, "[p]odiarty apt NOT required but has apt scheduled and will keep." (*Id.* at ¶ 25.)

6

Roberts denies seeing Dr. Dawalibi after March 6, 2014. (ECF No. 93, Pl.'s Resp. to SOF, at ¶¶ 11-12; ECF 74-1, Pl.'s Dep., at 79:15-80:1.) Dr. Dawalibi's records, however, indicate that he saw Roberts on October 20, 2014, noted mild athlete's foot on Robert's right foot, and refilled Roberts' prescription antifungal cream. (*Id.* at ¶¶ 27-29.) Currently, Roberts' feet occasionally itch but the other issues have resolved. (ECF 74-1, Pl.'s Dep., at 55:7-57:17; ECF No. 74, Def.'s SOF, at ¶ 30.)

During his deposition, when Roberts was asked what he thought Dr. Dawalibi did wrong, he responded, "through this whole matter, pertaining to the whole situation, Dr. Dawalibi did what he—I could see that he was only able to do" what he could do; "[i]f he's not a [podiatrist]," he could not "deal[] with the feet." (ECF 74-1, Pl.'s Dep., at 60:8-23.) In Roberts' opinion, Dr. Dawalibi "was trying to basically help [him] out" but was not responsible for the Jail's system for scheduling medical appointments. (*Id.* at 60:24-61:10.) As Roberts explained, "[e]ven [Dr. Dawalibi] doesn't even know what's going on from the time when he put it [the referral to the podiatrist] in the computer." (*Id.* at 88:6-11.) "If you go to the dispensary and you steady seeing somebody trying to do something for you, you thinking one day it's going to happen . . . . I feel that all I can do is—when I see you try to do something, I could be patient and try to wait." (*Id.* 88:20-89:6.) Roberts also criticized Dr. Dawalibi for not telling him to discontinue the dry skin cream, but said that he "can't truly put it all on him" because Dr. Dawalibi was "not a foot doctor." (*Id.* at 96:21-24.) He agreed that Dr. Dawalibi "did everything he could to try to, per se, help [him]."[4] (*Id.* at 111:8-11; ECF No. 74, Def.'s SOF, at ¶ 31.)

---

[4] Roberts attempts to retract this portion of his deposition testimony by saying "agree and disagree" in response to Dr. Dawalibi's quotation of his testimony. (ECF No. 93, Pl.'s Resp. to Def.'s SOF, at ¶ 14.) Merely characterizing a fact as disputed, however, is insufficient to transform it into a disputed issue of fact sufficient to survive a motion for summary judgment. *See Hurst v. Mauger*, No. 11 C 8400, 2013 WL 1686842, at *2 (N.D. Ill. Apr. 16, 2013). Similarly, a conclusory post-deposition assertion that is directly contrary to prior deposition testimony is not enough to defeat summary judgment. *See Simpson v.*

7

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013). In deciding a motion for summary judgment, the court "review[s] the evidence in the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in its favor." *NES Rental Holdings, Inc. v. Steine Cold Storage, Inc.*, 714 F.3d 449, 452 (7th Cir. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The party opposing the motion for summary judgment "gets the benefit of all facts that a reasonable jury might find." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314 (7th Cir. 2011). However, the opposing party cannot rely on mere conclusions and allegations to create factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Nor can speculation be used "to manufacture a genuine issue of fact." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (citing *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001)). A court will grant summary judgment "if no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (internal quotation marks omitted); *see also Northbound Group, Inc. v. Norvax, Inc.*, 5 F. Supp. 3d 956, 966-67 (N.D. Ill. 2013).

## III. DISCUSSION

The Court allowed Roberts to proceed on a deliberate indifference claim against Dr. Dawalibi. (ECF No. 9.) The "same legal standards" govern "deliberate indifference claims

---

*Franciscan Alliance, Inc.*, 827 F.3d 656, 662 (7th Cir. 2016). The Court will, therefore, consider this portion of Roberts' deposition testimony.

8

brought under either the Eighth or Fourteenth Amendment" by prisoners or pretrial detainees, respectively. *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). "A prison official may be found in violation of an inmate's Eighth Amendment right to be free from cruel and unusual punishment if she acts (or fails to act) with 'deliberate indifference to [the inmate's] serious medical needs.'" *Conley v. Birch*, 796 F.3d 742, 746 (7th Cir. 2015) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016) (en banc). Deliberate indifference claims contain both an objective and a subjective component: the inmate must have an objectively serious medical condition and the defendant must be subjectively aware of and consciously disregard the inmate's serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Dr. Dawalibi contends that he is entitled to summary judgment because Roberts' athlete's foot is not a serious medical condition. He further argues that, in any event, Roberts cannot prevail because undisputed facts demonstrate as a matter of law that he was not deliberately indifferent to Roberts' condition. For the reasons discussed below, Roberts has not pointed to evidence sufficient to survive summary judgment as to either element and Dr. Dawalibi's motion is granted.

A. **Serious Medical Condition—Objective Element**

A serious medical condition is one that a physician has diagnosed as mandating treatment or one that is so obvious that even a lay person would know that a doctor's attention was needed.'" *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005)). A condition also may be objectively serious if a "failure to treat it could result in further significant injury or the unnecessary and wanton infliction of pain." *Hayes*, 546 F.3d at 522 (quotation marks and citation omitted).

9

In certain circumstances, skin wounds can rise to the level of an objectively serious medical condition. *See Oliver v. Stadnicki*, No. 14 C 9149, 2015 WL 4266411, at *3 (N.D. Ill. July 10, 2015) (athlete's foot that produced open, leaking sores that did not respond to antibiotics "lends some support to his contention that his condition was more than a simple case of foot fungus"). Nevertheless, garden-variety athlete's foot—even if it is accompanied by chronic itching, dry and peeling skin, and discomfort—does not rise to the level of a serious medical need. *See Gray v. Ghosh*, No. 12 C 194, 2013 WL 5497250, at *1 (N.D. Ill. Oct. 3, 2013) ("every court to have considered the question has held that a foot fungus (that is, athlete's foot) does not satisfy the objective component of an Eighth Amendment deliberate indifference claim"); *see also Perez v. Hardy*, No. 13 C 5635, 2015 WL 5081355, at *7 (N.D. Ill. Aug. 27, 2015) (collecting cases rejecting the contention that athlete's foot is a objectively serious medical condition); *Hutcherson v. Moore*, No. 10 C 6215, 2013 WL 5165740, at *4 (N.D. Ill. Sept. 13, 2013) (collecting cases holding that fungal conditions, such as athlete's foot and jock itch, are neither life-threatening nor serious enough to violate the Eighth Amendment); *Aragon v. Baroni*, No. 13-CV-02772-RBJ-BNB, 2014 WL 3562998, at *8 (D. Colo. July 18, 2014) (surveying federal court cases throughout the country and concluding that standard athlete's foot is not a serious medical condition).

According to Roberts, at one point, his athlete's foot worsened, so his feet were bleeding and he "was peeling chunks of skin off [his] feet." (ECF No. 74-1, Pl.'s Dep., at 50:2-15.) The Court need not reach whether this purportedly acute athlete's foot constitutes an objectively serious medical need that is distinguishable from garden-variety athlete's foot because the record shows that on the dates that Roberts contends he saw Dr. Dawalibi (which the Court will accept as Roberts is opposing summary judgment), he was experiencing the type of discomfort typically

associated with athlete's foot. *See Gray*, 2013 WL 5497250, at *1. Specifically, Roberts contends that he saw Dr. Dawalibi on January 6, 2014 (the day that his feet first began to burn and feel itchy), and concedes that he did not ask Dr. Dawalibi to prescribe medication for his feet. The parties agree that Roberts saw Dr. Dawalibi on March 5, 2014, when Dr. Dawalibi volunteered to have a spontaneous appointment with Roberts after overhearing Roberts discuss his feet with a nurse. On that date, Dr. Dawalibi examined Roberts' feet, concluded that Roberts was experiencing foot odor and had dead foot skin with no signs of infection, and did not observe any bleeding or difficulty walking. Although Roberts denies seeing Dr. Dawalibi on October 20, 2014, at that time, Dr. Dawalibi's treatment notes indicate that he diagnosed Roberts with mild athlete's foot on his right foot and refilled Roberts' prescription antifungal cream.

Even assuming that Roberts had athlete's foot each time he purportedly saw Dr. Dawalibi, his condition at those times, while "undoubtedly inconvenient and uncomfortable, is common among non-incarcerated citizens" and does not rise to the level of a serious medical need. *Rogers v. Allen Cty. Jail*, No. 1:06-CV-139 TS, 2006 WL 1441092, at *2 (N.D. Ind. May 25, 2006); *see also Hutcherson*, 2013 WL 5165740, at *5 ("While [jock itch, which is caused by the same fungus responsible for athlete's foot] clearly caused Plaintiff discomfort and some pain, the evidence does not establish that it was life threatening or caused any long-term disability or detriment"); *Gray*, 2013 WL 5497250, at *6 (inmate could not survive summary judgment because he had "had nothing more, nothing less, than garden variety athlete's foot" despite his contention that his athlete's foot was responsible for a hole between his toes that "emitted a clear, moist fluid, but did not bleed" that ultimately healed and the record did not indicate that he experienced ongoing "pain, discoloration, or numbness"); *Robinson v. Milwaukee Secure Det. Facility*, No. 15-C-263, 2016 WL 3620770, at *2 (E.D. Wis. June 29, 2016) (granting

defendants' motion for summary judgment because inmate's itchy bedbug bites that were relieved by hydrocortisone cream were not a serious medical condition); *Smith v. Schwartz*, 2011 WL 2115831, at *3 (S.D. Ill. May 26, 2011) ("Smith's allegations that he suffered chronic itching, athlete's foot, chafing, peeling skin, and a painful, infected rash on his buttocks due to an inability to shower and clean his cell while Pinckneyville was locked down do not show a serious medical condition.").

In sum, Roberts' most serious allegation about his foot condition on the three days that he purportedly saw Dr. Dawalibi (which are the only relevant days for the purposes of Dr. Dawalibi's motion for summary judgment) is that he experienced pain while walking due to itching and burning caused by athlete's foot. He has not pointed to any evidence suggesting that when he saw Dr. Dawalibi, his foot condition posed a significant risk to his health. Even assuming that Roberts had athlete's foot each time he interacted with Dr. Dawalibi about his feet, his condition on those dates does not have constitutional stature, as "[a] prison's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution." *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997) (internal quotations omitted). Thus, he has failed to demonstrate that his athlete's foot was an objectively serious condition. *See Gray*, 2013 WL 5497250, at *2 (*Gutierrez v. Peters*, 111 F.3d 1364, 1372).

Accordingly, Dr. Dawalibi is entitled to summary judgment based on the objective element. As discussed below, however, even if Roberts somehow could prevail on this element of his claim, Dr. Dawalibi still would be entitled to summary judgment because Roberts cannot show Dr. Dawalibi was deliberately indifferent to his medical condition.

### B. Deliberate Indifference—Subjective Element

Alternatively, even if Roberts' athlete's foot was a sufficiently serious objective condition, he cannot survive summary judgment because he has not pointed to evidence that supports an inference that Dr. Dawalibi was deliberately indifferent. "Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (internal citations omitted). Instead, deliberate indifference is comparable to criminal recklessness. *Farmer*, 511 U.S. at 837. Neither medical malpractice nor a mere disagreement with a doctor's medical judgment constitute deliberate indifference. *See Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012); *see also King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) ("Negligence—even gross negligence—is insufficient to meet this standard").

Here, Roberts asserts that he saw Dr. Dawalibi on January 6, 2014, immediately after his feet began to itch and burn. According to Roberts, Dr. Dawalibi visually inspected Robert's feet and then spent what "could have been 45 minutes to an hour" examining Roberts generally and evaluating his feet. (ECF No. 74-1, Pl.'s Dep., at 36:18-37:1.) Although Roberts did not ask Dr. Dawalibi for cream or other medication for his feet and Dr. Dawalibi did not believe that Roberts had athlete's foot at the time (indeed, Dr. Dawalibi denies that he saw Roberts at all on January 6, 2014), Roberts contends that Dr. Dawalibi referred Roberts to a podiatrist and personally entered the referral into Cermak's computerized scheduling system.

Next, the parties agree that on March 5, 2014, Dr. Dawalibi overheard Roberts talking to a nurse about his feet and called Roberts into his office so he could examine his feet. Dr. Dawalibi did so; it is undisputed that as of this date, Roberts was experiencing foot odor and had dead skin on his feet with no signs of infection. During this spontaneous appointment, Dr.

13

Dawalibi re-referred Roberts to a podiatrist. Finally, although Roberts denies seeing Dr. Dawalibi on October 20, 2014, Dr. Dawalibi's records indicate that during an appointment on this date, he diagnosed Roberts with mild athlete's foot on the right foot, and refilled Roberts' prescription antifungal cream.

These interactions are insufficient, as a matter of law, to demonstrate deliberate indifference because Dr. Dawalibi's treatment, as described by Roberts, easily exceeds the constitutional floor of "adequate, minimum-level care." *Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016) (en banc). The Court cannot find that a 45 minute to an hour appointment that included what appears to be a prophylactic podiatrist referral, followed by a spontaneous appointment after Dr. Dawalibi overheard Roberts discussing his feet with a nurse and a renewal of the podiatrist appointment despite a lack of signs of an infection, and then a renewal of Roberts' prescription for antifungal cream in response to mild athlete's foot on one foot falls outside the realm of reasonable professional judgment. *See Davis v. Lemke*, No. 13 C 3971, 2016 WL 5404601, at *7 (N.D. Ill. Sept. 28, 2016) (granting summary judgment to defendant because "[w]hile it is certainly the case that unnecessarily delay in responding to a medical need may establish deliberate indifference, . . . the undisputed facts here show that [defendant] enabled, rather than delayed," a referral to a specialist when various treatments did not resolve an inmate's complaints of ear pain that was not supported by objective signs of illness); *Hanson v. Meier*, No. 14-CV-750, 2016 WL 799229, at *7 (E.D. Wis. Feb. 29, 2016) (dismissing claims based on the lack of a referral to a podiatrist to treat toe pain when the inmate's treating physician prescribed special shoes, insoles, and cortisone shots even though the inmate's "toes lacked signs or symptoms of inflammation, infection, or other disease processes").

This is true even though Roberts faults Dr. Dawalibi for not telling him to discontinue the dry skin cream during the alleged January 6, 2014 appointment. Even if the Court were to accept as true for purposes of resolving the pending motion for summary judgment that Roberts saw Dr. Dawailby on January 6, the law is clear that medical professionals may choose from "a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter,* 541 F.3d 688, 697 (7th Cir. 2008). Thus, "[a] medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014) (quoting *Sain v. Wood,* 512 F.3d 886, 894-95 (7th Cir. 2008)). Moreover, an inmate's criticism of medical treatment he received is generally insufficient to establish an Eighth Amendment violation. *Id.* Instead, "[t]he federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment. *Id.*

Assuming that events transpired as described by Roberts, the record contains no evidence supporting such an inference. Thus, the purported failure to instruct Roberts to discontinue the dry skin cream during the alleged January 6, 2014 appointment does not create a triable issue of fact regarding deliberate indifference. *See Whiting v. Wexford Health Sources, Inc.,* 839 F.3d 658, 663 (7th Cir. 2016) (affirming grant of doctor's motion for summary judgment when the plaintiff did not "have *any* expert testimony indicating that [the doctor's] infection diagnosis and concomitant treatment plan departed from accepted medical practice, much less *substantially* so") (emphasis in original).

In addition, even Roberts believes that Dr. Dawalibi "was trying to basically help [him] out" and acknowledges that Dr. Dawalibi was not responsible for the Jail's system for scheduling medical appointments. (ECF 74-1, Pl.'s Dep., at 60:24-61:10.) This is consistent with the record, because according to Roberts, Dr. Dawalibi spent a significant amount of time with him on three different occasions, including on-the-spot care when he overhead Roberts complaining about the lack of a podiatrist appointment.

Moreover, while Roberts alleges that he experienced difficulties seeing a podiatrist, he has not identified any evidence suggesting that Dr. Dawalibi was at fault or was even aware—prior to overhearing Roberts complain on March 5, 2014—that the podiatrist appointment he had purportedly made on January 6, 2014, had not taken place.[5] *See Holtz v. Coe*, No. 14-CV-367-NJR-DGW, 2016 WL 5369464, at *7 (S.D. Ill. Sept. 26, 2016) (granting defendant doctor's motion for summary judgment because "there is no evidence that the error in scheduling [an appointment with another doctor] was in any way attributable to [defendant]" or that plaintiff notified defendant "of the delay in seeing [the second doctor]"). And when Dr. Dawalibi became aware that Roberts had not seen a podiatrist after overhearing him complain, he took it upon himself to stop what he was doing, to examine Roberts' feet, and reschedule a podiatry appointment. "This sort of meaningful and ongoing assessment of a patient's condition is the antithesis of 'deliberate indifference.'" *McGee v. Adams*, 721 F.3d 474, 482 (7th Cir. 2013); *see also Budd v. Motley*, 711 F.3d 840, 844 (7th Cir. 2013) (affirming dismissal of deliberate indifference claim when the inmate was dissatisfied with treatment but "received medical

---

[5] Roberts' contention that he was unable to see a podiatrist to treat athlete's foot is contradicted by undisputed evidence that he saw podiatrist Doyle on January 30, 2014, and that Dr. Doyle concluded that as of that date, he did not have athlete's foot. (ECF No. 74, Def.'s SOF, at ¶ 12.) Regardless of who arranged for the podiatry referral, the record thus shows that Roberts saw a podiatrist in January 2014. The Court has nevertheless addressed Roberts' arguments in the interests of completeness.

attention, medication, testing, and ongoing observation"). Roberts thus has failed to demonstrate a triable issue of fact regarding deliberate indifference.

Accordingly, Dr. Dawalibi's motion for summary judgment is granted. If Roberts wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If he appeals, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Roberts could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Roberts seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

Roberts need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an

appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## IV. CONCLUSION

For the above reasons, Dr. Dawalibi's motion for summary judgment [73] is granted. The Clerk is directed to enter final judgment accordingly.

						_____
						Jeffrey T. Gilbert
						United States Magistrate Judge

Dated: March 8, 2017