# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Earl Roberts (Y-15872), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 14 C 4719 |
| v. | ) | |
| | ) | Judge Jeffrey T. Gilbert |
| | ) | |
| Salim J. Dawalibi, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Earl Roberts' motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) [116] is denied. The judgment in Dr. Dawalibi's favor stands. This case remains closed. This is a final and appealable order.

## STATEMENT

In this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, Plaintiff Earl Roberts, who is currently in state custody, contends that Dr. Salim Dawalibi provided constitutionally inadequate care for athlete's foot when Roberts was detained at the Cook County Jail. On March 8, 2017, the Court granted Dr. Dawalibi's motion for summary judgment and entered final judgment. (ECF Nos. 112 & 113.) Roberts' "Reconsider Judgment: Rule 59(e) Motion" (ECF No. 116), which seeks to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e), is presently before the Court.

"The purpose of a motion to alter or amend judgment under Rule 59(e) is to ask the court to reconsider matters 'properly encompassed in a decision on the merits.'" *Wine & Canvas Dev. LLC v. Muylle*, No. 1:11-CV-01598-TWP, 2015 WL 6554686, at *1 (S.D. Ind. Oct. 28, 2015) (quoting *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989)). To be entitled to relief under Rule 59(e), the movant must "clearly establish[ ] a manifest error of law or fact" or point to newly discovered evidence. *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015). A manifest error "is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation and quotation marks omitted). Moreover, a Rule 59(e) motion "is not an appropriate forum for rehashing previously rejected arguments." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

In its opinion granting Dr. Dawalibi's summary judgment, the Court held that Roberts was not entitled to a trial on his Fourteenth Amendment medical claim because he did not identify evidence suggesting that his athlete's foot rose to the level of a serious medical need or that Dr.

Dawalibi was deliberately indifferent. For present purposes, familiarity with that opinion is assumed. Roberts asks the Court to revisit its ruling for ten reasons.

*Point One*

Roberts represents that he was "sent to segregation for trying to have everything [*i.e.*, his materials in opposition to Dr. Dawalibi's motion for summary judgment] on time and to learn how to comply with Fed. R. Civ. P. 56(e) and Local Rule 56.1" but was released after eight days when he produced copies of the Court's order setting a briefing schedule for the summary judgment motion. (ECF No. 116, pg. 2.) To the extent that Roberts challenges his placement in segregation, he must file a new lawsuit in the proper district; the Court offers no opinion on whether such a claim would be viable. But that claim is not part of this case.

Roberts also inconsistently states that he "still hasn't been able to go over to the law library" and that he first obtained assistance in the library in connection with his Rule 59 motion. (*Id.*, pgs. 2, 8.) Roberts did not bring any concerns about law library access to the Court's attention during briefing despite opportunities to do so (as demonstrated, for example, by his filing of an objection to Dr. Dawalibi's requests for extensions of the summary judgment briefing schedule, ECF No. 81, and his own motion for an extension of that schedule, ECF No. 90). In any event, the Court construed the summary judgment record in the light most favorable to Roberts and has carefully considered all of his arguments in support of his request for reconsideration, which he made with the benefit of the Court's opinion and—according to Roberts—law library access. Thus, his assertions about law library access do not warrant relief.

*Point Two*

Roberts asserts that Dr. Dawalibi prescribed the dry skin cream that, as detailed in the summary judgment opinion, was eventually changed to an antifungal cream. This is inconsistent with Robert's deposition testimony, as when he was asked to identify the doctor who prescribed the dry skin cream, he responded, "I can't say which doctor because during the course—I've been here three years and three months. We have a lot of doctors that came and saw us. I can't, per se, specifically tell you which one put me on the dry skin cream." (ECF No. 74-1, Pl.'s Dep. at 40:1-7.)

In any event, during his deposition, Roberts criticized Dr. Dawalibi by asserting that during the purported January 6, 2014 appointment, Dr. Dawalibi did not tell him to discontinue the dry skin cream. (*Id.* at 96:2-24.) The Court rejected this criticism, explaining that medical professionals may choose from "a range of acceptable courses based on prevailing standards in the field," *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008), so a doctor "is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances,'" *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)). The Court also noted that an inmate's criticism of medical treatment he received is generally insufficient to establish a constitutional violation. *Pyles*, 771 F.3d at 409. Instead, "[t]he federal courts will not interfere with a doctor's decision to pursue a

particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Id.*

Roberts' current contention about the dry skin cream is essentially identical to his prior position. As such, it is not a proper subject for a motion to reconsider. *See Caisse Nationale de Credit Agricole*, 90 F.3d at 1270. It also does not alter the Court's finding "that on the dates that Roberts contends he saw Dr. Dawalibi (which the Court will accept as Roberts is opposing summary judgment), he was experiencing the type of discomfort typically associated with athlete's foot" and thus did not have a serious medical need. (ECF No. 112, pgs. 10-11.) In addition, it does not demonstrate that Dr. Dawalibi was deliberately indifferent, given the care given by Dr. Dawalibi that is detailed in the summary judgment opinion. In sum, Roberts' position about the dry skin cream was not, and still is not, sufficient to survive summary judgment.

*Points Three, Four, and Nine*

Roberts denies that he saw Dr. Feldman on January 6, 2014, and contends that he actually had an appointment with Dr. Dawalibi. (ECF 116. pgs. 2-3.) Next, he points to a podiatry referral in further support of his contention that he saw Dr. Dawalibi on January 6, 2014. (*Id.*) He also says that "Dr. Dawalibi lied from the beginning about not seeing [him] in January of 2014." (*Id.*, pg. 9.) The Court previously evaluated the evidence about the January 6, 2014 appointment (*Id.*, pgs. 4-5), and accepted that Roberts saw Dr. Dawalibi on that date for the purposes of summary judgment. (*Id.*, pgs. 11-12.) Hence, there is nothing to reconsider as the Court adopted the position now repeatedly urged by Roberts.

*Point Five*

Roberts denies that he has "ever seen a podiatrist" (ECF 116. pg. 4.) He also denies that he saw Dr. Doyle (a podiatrist) on January 30, 2014, pointing to medical records from a different appointment (ECF No. 107, pg. 12-13; CCSAO 00219-20). However, the record contains Dr. Doyle's consultation notes memorializing a January 30, 2014 appointment. (*Id.*, pg. 17; CCSAO 00232.) Plaintiff's bald contention that his medical records are "false" (ECF 116, pgs. 4-6) is conclusory and unavailing. In any event, this alleged dispute does not demonstrate that Dr. Dawalibi—who according to Roberts, twice referred him to a podiatrist as a prophylactic measure—was deliberately indifferent to a serious medical need.

*Point Six*

Roberts briefly states that Dr. Dawalibi twice referred him to a podiatrist. For the reasons discussed in detail in the summary judgment opinion, this does not create a triable issue of fact as to deliberate indifference to a serious medical need. (ECF No. 112, pgs. 13-16.)

*Point Seven*

Contrary to his deposition testimony, which the Court quoted in its summary judgment opinion (ECF 112, pg. 6), Roberts now disputes that in June 2014, a doctor told him that he had "a serious case of athletic feet." (ECF 116, pg. 4.) Instead, he asserts that Physician's Assistant Barbara Davis first diagnosed him with athlete's foot on July 3, 2014. This does not demonstrate that Dr. Dawalibi was deliberately indifferent to a serious medical need on January 6, 2014 (when Roberts says he saw Dr. Dawalibi, despite notes indicating that he saw Dr. Feldman), March 5, 2014 (when both the parties agree that Dr. Dawalibi treated Roberts), or October 20, 2014 (when medical records indicate that Roberts had an appointment with Dr. Dawalibi, even though Roberts denies that this appointment took place).

*Point Eight*

Roberts denies he saw Dr. Dawalibi on October 20, 2014. The Court acknowledged this dispute in the summary judgment opinion; it did not affect the result. (ECF 112, pgs. 7, 11-12.)

*Point Ten*

Roberts contends that the Court should not have granted Dr. Dawalibi's requests for an extension of the summary judgment briefing schedule. He did not suffer any prejudice relating to the briefing schedule and regardless, the Court previously overruled this objection. (ECF 87.)

For all of these reasons, Roberts' motion to alter or amend the judgment is denied. The judgment in Dr. Dawalibi's favor stands. This case remains closed. If Roberts wishes to appeal, he must file a notice of appeal with this Court within 30 days of this order. *See* Fed. R. App. P. 4(a)(4)(A)(iv). He is reminded that if he does so, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). He also is reminded that if an appeal is found to be non-meritorious, he could be assessed a "strike" under 28 U.S.C. § 1915(g), and that if he accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, he may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. If Roberts seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: April 24, 2017